In the Matter of the ONONDAGA LITH-OLITE COMPANY, Bankrupt.

FIRST TRUST AND DEPOSIT COMPANY, Appellant,

v.

RECEIVER OF SALT SPRINGS NATIONAL BANK, Joseph T. Connolly; Anna C. Doyle, Howard T. Yates, George D. Zett, and George A. Langan, as Trustee of Bankrupt's Estate, Appellees.

No. 144, Docket 23069.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1954.

Decided Jan. 19, 1955.

Hiscock, Cowie, Bruce, Lee & Mawhinney, Syracuse, N. Y. (Gerald H. Henley, Syracuse, N. Y., of counsel), for appellants.

Smith & Sovik, Syracuse, N. Y. (Martin F. Kendrick, Syracuse, N. Y., of counsel), for appellees.

Before SWAN, FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This appeal is brought by the First Trust and Deposit Company, a creditor of the bankrupt Onondaga Litholite Company, from an order of the Bankruptcy Court subordinating its claim to those of all other creditors. The trustee in bankruptcy and certain creditors are the appellees.

The facts are as follows: the appellant had loaned the Onondaga, prior to its adjudication, a substantial sum much needed by Onondaga as working capital. Thereafter, when Onondaga was unable to meet this and other obligations, the appellant and another bank became vot-

ing trustees of Onondaga. The appellant also owned $18,900 in face amount of Onondaga's first mortgage bonds which were in default and, when convinced that Onondaga could no longer operate with profit, through a wholly controlled dummy, Domark, caused a foreclosure of the mortgage and on a foreclosure sale bought in all the mortgaged property for $25,000.

Upon the adjudication of Onondaga the appellant had a claim of undisputed validity in the amount of $616,233.23. The trustee in bankruptcy brought an action in the New York State Supreme Court against the appellant based upon a claim that its acquisition, through the foreclosure sale, of Onondaga's mortgaged property constituted an illegal preference and a fraudulent conveyance. The trial court dismissed his complaint on motion, and its judgment was affirmed by the Appellate Division. The New York Court of Appeals, however, reversed on the ground that there was enough evidence in the case to afford an inference that acquisition by the appellant of the bankrupt's assets constituted an illegal preference or a fraudulent transfer. The trustee prevailed in the trial court on the second run. The Appellate Division affirmed the judgment of the trial court except as to damages: it directed a judgment in favor of the trustee in the amount of $55,000 which it found to represent the full market value of the transferred assets ($54,850), less the amount paid by appellant at the foreclosure proceeding ($25,000), plus interest on the difference ($21,551.70), plus costs of $1,946.95, the judgment also providing for additional interest to be computed to date of payment. Langan v. First Trust & Deposit Co., 277 App.Div. 1090, 101 N.Y.S.2d 36. This judgment was affirmed by the New York Court of Appeals, 302 N.Y. 932, 100 N. E.2d 189, and was promptly paid to the trustee by the appellant.

The question presented is whether the appellant is entitled in the Bankruptcy Court to share on a parity with other unsecured creditors in a fund made available for distribution only after a successful showing by the trustee in the state-court action that the appellant was the recipient of an illegal preference or fraudulent transfer of the bankrupt's property.

The referee and the court below held that a bankruptcy court is a court of equity with the power to subordinate claims in cases of this type. Appellant's claim was subordinated on the theory that as a transferee of a fraudulent conveyance it is not entitled to share equally with other creditors on general equitable principles.

We think that Section 57, sub. g, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g, applies here. Under that section, "the claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditor shall surrender such preferences" etc.

We hold that the Bankruptcy Court was without power in the circumstances of this case, to order the subordination of the appellant's claim. Section 57, sub. g was designed to insure equality of distribution of the bankrupt's assets, not exempted under the Act, amongst its creditors: it was not designed to punish a creditor who had sought to withhold the debtor's assets from the bankruptcy estate. If a creditor having a valid common claim free from equitable infirmities, in an effort to obtain satisfaction of his claim or security therefor, accepts a conveyance of assets of his debtor—later the bankrupt—with actual intent thereby to defraud the debtor's other creditors, nevertheless, if after adjudication he surrenders the assets thus acquired to the court, he may share on a parity with other creditors. And it makes no difference that the surrender is the result of a successful action instituted by the trustee against the creditor: Section 57, sub. g *does not distinguish between volun-*

**674**

*tary and involuntary surrender.* Keppel v. Tiffin Savings Bank, 197 U.S. 356, 25 S.Ct. 443, 49 L.Ed. 790; Page v. Rogers, 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332. In the Keppel case the Court, so far as here relevant, was faced with the same language as is found in the present Section 57, sub. g, and its doctrine has been frequently followed. Wells v. Lincoln, 9 Cir., 214 F. 227; Boylston National Bank v. Wainhouse, 1 Cir., 14 F.2d 385; Barks v. Kleyne, 8 Cir., 15 F.2d 153; In re Cook, D.C.N.D.Ga., 298 F. 125; Winkleman v. Ogami, 9 Cir., 123 F.2d 78; Irving Trust Co. v. Frimitt, D.C., 1 F. Supp. 16; In re George M. Hill Co., 3 Cir., 130 F. 315, 66 L.R.A. 68; In re Clark, D.C.N.Y., 176 F. 955. Cases governed by the Bankruptcy Acts of 1867 and 1874, 14 Stat. 517, 18 Stat. 178, must be distinguished, 3 Collier on Bankruptcy, p. 241.

As the cases above-cited show, whether the transaction which was litigated in the state court was an illegal preference is not material under Section 57, sub. g. It is true that some cases seem to suggest that participation by a creditor in a fraudulent transfer, as distinguished from an illegal preference, may require the subordination or disallowance of the creditor's valid claim. See Union Central Life Insurance Co. v. Drake, 8 Cir., 214 F. 536; In re Oppenheimer, D.C.N.D.Iowa, 140 F. 51. See also In re Sherk, D.C.N.D.Ohio, 108 F. Supp. 144, which held, without reference to any authority, that section 57, sub. g makes a distinction between voluntary and involuntary surrender. We think that these cases erroneously interpret section 57, sub. g and the Keppel case which was cited with approval by the Supreme Court as recently as 1944. L. P. Steuart & Bros., Inc., v. Bowles, 332 U.S. 398, 404, 64 S.Ct. 1097, 88 L.Ed. 1350. Moreover, Section 57, sub. n of the Bankruptcy Act, without any distinction between preferences and fraudulent transfers, allows a creditor to file his claim within 30 days after the recovery or avoidance by the trustee. See also Dabney v. Chase National Bank, 2 Cir., 196 F.2d 668, 673.

We think it not reasonable to assume that Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 and Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293, on which the court below relied, overruled, *sub silentio,* the Page and Keppel cases especially in view of the long line of cases cited above which followed their doctrine. The issues in the Pepper and Sampsell, cases did not involve Section 57, sub. g and that section of the Act is nowhere referred to in those decisions. These were cases in which the creditors' underlying claims were subject to equitable defenses: the decisions turned on that factor.

We do not think it of any consequence that the state-court action as originally instituted purported to be brought solely for creditors other than appellant and that the judgment in the state court was for money damages instead of recovery of the bankrupt's assets in kind. The trustee's power is determined under the Bankruptcy Act. As so measured, the trustee, in seeking to recover assets of the estate, acts for all creditors and lacks power to exclude any from the benefit of a successful endeavor. Certainly the thrust of Section 57, sub. g may not be avoided by a misconception on the part of a trustee as to his duties and powers. The case would be different if the trustee in the state-court action had not fully recovered the assets or the value thereof from the transferee-creditor. This is not such a case.

Reversed.