places and in such manner that they would not be injured by the ordinary contingencies of the voyage. The David & Caroline, 5 Blatchf. 266, Fed. Cas. No. 3,593; The Mississippi (D. C.) 113 Fed. 985; Id. (C. C. A.) 120 Fed. 1020.

The circumstances seem to fully establish negligent stowage. The condition of the goods when discharged, indicated that they had been subjected to a heavy weight or pressure, which not only broke the packages but practically destroyed some of the contents. If the damage had been slight and confined to the packages, it would denote negligence, because it was recognized that these were not the kind of packages that would sustain a heavy weight, and it was claimed by the respondents, that they distributed them as far as possible and put them on top of other cargo, so that they would not be subjected to danger from such source. It appears, however, that while the danger of piling the packages on top of each other to any great extent was obvious and, accordingly, in some places only two tiers were stowed, yet, in other places there were at least six. Tiering so many packages of goods of this class has been observed, in other cases, to cause some damage. But the crushing and destruction of some of the packages and their contents point to still more negligent stowage in some respect which does not appear, but for which the condition of the goods when delivered, is sufficient to fix the responsibility upon the respondents.

Decree for the libellant, with an order of reference.

---

### In re BROWN. In re DAVIDSON. In re AMTER.

#### (District Court, D. Colorado. June 16, 1903.)

#### Nos. 574, 675, 510.

1. BANKRUPTCY—TIME FOR PROVING CLAIMS—COMPOSITION WITH CREDITORS—
   EFFECT.

   Bankr. Act 1898, § 57, Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], provides that claims against a bankrupt estate shall not be proved subsequent to one year after the adjudication. Section 12a, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426] provides that the bankrupt may offer terms of composition "after but not before he has been examined in open court, or at a meeting of his creditors." Clause "b" provides for a confirmation of the composition after it has been accepted by a majority of creditors "whose claims have been allowed." Clause "e" provides that, if the composition shall fail, "the estate shall be administered in bankruptcy as herein provided." *Held*, that the fact that a composition was effected did not extend the time given a creditor to prove his claim.

Bicksler, McLean & Bennett, for petitioning creditors.
Thomas & Thomas, for respondent.
Muller & Summerfield, for D. J. Davidson.

HALLETT, District Judge. On petition of certain of his creditors, Max Brown was adjudicated a bankrupt April 29, 1901. Afterwards, he offered terms of composition to his creditors, which were accepted by his creditors pursuant to section 12 of the bankrupt act (Act July

1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]) and the composition was confirmed December 2, 1901. As usual in such cases, not all of the creditors of the bankrupt had proved their claims at the time of the proceedings in composition, and the amount of money brought into court was sufficient to pay, not alone the claims then proved and allowed, but also such as might thereafter be presented for allowance. One creditor, the Indianapolis Chair Manufacturing Company, did not present its claim for $184.69 until January 13, 1903, more than 20 months after the adjudication. On that day the creditor filed a petition to have its claim allowed, and alleged that its failure to present the claim within one year after adjudication was due to the negligence of its attorneys residing in the town of Cripple Creek; that it is a nonresident corporation doing business in the state of Indiana, and its officers had no personal knowledge of the proceedings in bankruptcy. May 11, 1903, the bankrupt filed a petition to have the money in court refunded to him. The amount of money in court is but little more than the amount claimed by the creditor, and the difference is probably due to some error of computation.

The question presented by these petitions is whether, in a case where composition is effected, a creditor must, under section 57 of the bankrupt act, prove his claim within one year from the date of adjudication. That he must do so in ordinary cases where composition is not made, has been the uniform rule since the act was passed. In re Meyer Stein (C. C.) 1 Am. Bankr. R. 662, 94 Fed. 124. The rule must be the same in a case where composition is made. Under section 12, the bankrupt may offer terms of composition "after but not before he has been examined in open court, or at a meeting of his creditors." The creditors here referred to are such as have proved their claims, for no others can participate in a meeting of creditors. Clause "b" of this section provides for confirmation of the composition "after but not before it has been accepted in writing by a majority in number of all creditors whose claims have been allowed." Under clause "e," if the composition shall fail, "the estate shall be administered in bankruptcy as herein provided." As to the proof of claims, the course of proceeding is precisely the same whether there be composition, or proceedings are carried through in ordinary course. Only those creditors who prove their claims within one year from the date of adjudication can have dividends from the estate, or assert a right to share in the funds paid in composition. The officers of the court cannot know what amount should be paid to a creditor, or, indeed, who are creditors, except upon proof of their claims in the time and manner provided by law. The bankrupt is entitled to the money remaining in court unclaimed after the expiration of the year in which proof of claims could be made, and the creditor cannot be heard to say that it was not in fault in respect to the failure to present its claim. The language of the statute permits no exceptions to its terms. "Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication." No language could be more explicit, and no court can doubt as to its meaning.

The application of the Indianapolis Chair Manufacturing Company will be denied, and the petition of the bankrupt will be granted.

Two other cases, In re Davidson, 675, and In re Ampter, 510, of the Pueblo docket, are said to present the same question, and a similar order will be entered in each of them.

McDANIEL et al. v. TRAYLOR et al.

(Circuit Court, E. D. Arkansas. June 20, 1903.)

1. UNITED STATES CIRCUIT COURT—JURISDICTION—AMOUNT INVOLVED—ACTION TO SET ASIDE JUDGMENTS OF SEPARATE DEFENDANTS—RIGHT TO AGGREGATE JUDGMENTS.

A suit by heirs to set aside, as fraudulent, a number of judgments rendered by a probate court in favor of different defendants against the estate, cannot be brought within the jurisdiction of the circuit court by adding together the amounts of the judgments, so as to produce an aggregate in excess of $2,000; no one judgment exceeding that amount, and there being no allegation making the defendants liable jointly, but the case requiring, in the event of a determination favorable to complainants, separate decrees against each defendant.

2. SAME—VALUE OF REAL ESTATE.

An action by heirs to set aside, as fraudulent, judgments rendered by a probate court against the estate, none of which exceeds $2,000, cannot be brought within the jurisdiction of the circuit court by reason of the fact that the real estate on which the judgments are liens exceeds in value that amount.

On Demurrer to Jurisdiction.

G. B. Webster and J. R. Beasley, for complainants.

N. W. Norton and R. W. Nicholls, for defendants.

TRIEBER, District Judge. This action was instituted by complainants, children and heirs at law of Hiram Evans, who died intestate, seised of considerable personal property and valuable real estate, lying and situate in this district. The object of the bill is to set aside, as fraudulent, a number of judgments rendered by the probate court of St. Francis county, Ark., in favor of the defendants, against the estate of their deceased father, which judgments are liens on the real estate, which, by the laws of descent of the state of Arkansas, has been inherited by complainants. The value of the real estate affected by the liens of these judgments exceeds $2,000, it is alleged in the bill, and so does the aggregate amount of the judgments of all the defendants, but no one of the judgments in favor of any one of the defendants exceeds that sum. The diversity of citizenship necessary to give a national court jurisdiction is shown by the bill, and the only question to be determined is whether the amount necessary to confer jurisdiction on this court is the aggregate amount of the judgments in favor of all the defendants, or whether each defendant's judgment must exceed the sum of $2,000, exclusive of interest. Although numerous defendants have been joined in the suit, the proceeding is in fact against each defendant separately. There is no allegation in the bill which

¶ 1. Jurisdiction of circuit courts, as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Greene v. Iron Co., 36 C. C. A. 459.